**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 18-1149**

───────────

KENNETH D. BELL, in his capacity as court-appointed Receiver for Rex Venture Group, LLC d/b/a ZeekRewards.com,

        Plaintiff - Appellee,

v.

DURANT BROCKETT,

        Defendant - Appellant,

and

RONALD COX; FRANK SCHEUNEMAN; THERESA BRIDIE; MARC KANTOR; PAOLA KANTOR; TIM RICE; WAYLAND WOODS; T.H.; EDWARD ROURKE; EDDY LAYNE; CLYDE GARRETT; LARRY ALFORD; AARON PIHA,

        Movants - Appellants,

and

EDDY LAYNE; CLYDE GARRETT; LARRY ALFORD; AARON PIHA,

        Parties Below - Appellants,

and

TODD DISNER; TRUDY GILMOND; TRUDY GILMOND, LLC; JERRY NAPIER; DARREN MILLER; RHONDA GATES; DAVID SORRELLS; INNOVATION MARKETING LLC; AARON ANDREWS; SHARA ANDREWS; GLOBAL INTERNET FORMULA, INC.; T. LEMONT SILVER; KAREN SILVER; MICHAEL VAN LEEUWEN; DAVID KETTNER; MARY KETTNER; P.A.W.S. CAPITAL MANAGEMENT LLC; LORI JEAN WEBER; A DEFENDANT CLASS OF NET WINNERS IN ZEEKREWARDS.COM; DEFENDANT CLASS,

        Defendants.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Graham C. Mullen, Senior District Judge.  (3:14-cv-00091-GCM)

Argued:  January 29, 2019                                    Decided:  April 25, 2019

Before NIEMEYER, KEENAN, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

**ARGUED:** Paul Augustus Capua, CAPUA LAW FIRM, PA, Boone, North Carolina, for Appellants.  Irving Michael Brenner, MCGUIREWOODS LLP, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Tarya Arnshelic Tribble, TRIBBLE LAW CENTER, PA, Riverview, Florida, for Appellants.  Kenneth D. Bell, Charlotte, North Carolina, Jacob D. Charles, MCGUIREWOODS LLP, Raleigh, North Carolina, for Appellee.

2

QUATTLEBAUM, Circuit Judge:

This case involves one of the rarest types of complex litigation, the defendant class action. Defendant class actions are so rare they have been compared to "unicorns." *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 853 (7th Cir. 2002).[1] In this case, members of the defendant class argue that the district court erred in certifying the class without simultaneously appointing counsel for the class and in failing to properly analyze the adequacy of class counsel. We agree that the district court failed to follow Federal Rule of Civil Procedure 23 on both of these issues. While these errors would prove fatal to the certification of a class in most instances, we nevertheless affirm the district court due to the unique circumstances of this case.

## I.

We begin with a review of the factual and procedural background that brings us to this appeal. Because of its importance to our conclusion, we describe this history in detail.

---

[1] This analogy is apt insofar as it relates the infrequency of defendant class actions and unicorns. But after that, the analogy breaks down. A survey of literature reveals that unicorns are often majestic and even magical creatures with attributes superior to those of traditional animals. One example is Jewel, the unicorn who is King Tirian's best friend from C.S. Lewis's *The Last Battle*. In that story, Jewel is a fierce warrior with attributes that are crucial in the battle to save Narnia from the forces of evil. In contrast, the attributes of defendant class actions are, at least at times, not so noble. In fact, the inherent risks of such proceedings are likely the reason for their rareness. 1 JOSEPH MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 4:46 (15th ed. 2018).

This case involves an alleged Ponzi scheme operated by Rex Venture Group, LLC ("RVG"). In 2011, RVG launched ZeekRewards ("Zeek"), the "private, invitation-only Affiliate advertising division" of Zeekler.com. Zeekler.com was an online auction website. In theory, Zeek offered participants ("Affiliates") an opportunity to share in RVG's revenues, including revenues from its online auction business. Affiliates purchased VIP bids, which entitled them to VIP points. The number of points an Affiliate purchased determined his or her share of the daily earnings or profits of RVG to which Affiliates were entitled. More points entitled Affiliates to a greater share of RVG's earnings or profits. Affiliates could earn benefits and money from RVG in other ways as well, either by recruiting new Affiliates to Zeek or signing up for a subscription.

While Zeek theoretically allowed Affiliates to share in the earnings of RVG, its online auction business generated only minimal revenue. In reality, an Affiliate only made money when other Affiliates purchased VIP bids or subscriptions generating funds for distribution. In other words, the business model necessarily robbed Peter to pay Paul. The problem with this model was that, without material revenue from the auction portion of the business, Zeek depended on signing up new Affiliates who would purchase VIP bids or subscriptions. If sign ups of new Affiliates slowed down or ultimately stopped, there would be no source of money for Affiliates, especially those that joined Zeek later, to recoup their investment.

Predictably, the addition of new Affiliates did in fact slow down. As a result, some Affiliates were net losers, receiving less money than they paid into Zeek ("Net Losers"), and some Affiliates were net winners, receiving more money than they paid into Zeek

4

("Net Winners"). According to one expert, nearly 90% of Affiliates were Net Losers, losing approximately $822.9 million. Nearly 8% of Affiliates were Net Winners, receiving approximately $282.1 million in profits. Of these Net Winners, the expert determined that 14,700 individuals received at least $1,000 more in payments from Zeek than they paid into Zeek. On the high end of the spectrum, some received over $1,000,000.

After the SEC filed an enforcement action to shut Zeek down and freeze RVG's assets, the district court appointed Kenneth Bell as the Receiver for Rex Venture Group, LLC d/b/a www.ZeekRewards.com ("Bell"). On February 28, 2014, Bell filed a defendant class action against the Net Winners of the Zeek scheme under the theory that the net winnings of the class were improper gains from a Ponzi scheme and that the gains should be recovered and returned to the Net Losers. Bell sought to certify the defendant class under Rules 23(a), 23(b)(1)(A) and 23(b)(1)(B). Bell asserted that the named defendants in the action should be appointed class representatives of the Net Winner class.

On July 30, 2014, Bell moved to certify the defendant class. Bell proposed a class definition "consisting of all persons or entities who were Net Winners in ZeekRewards . . . of more than one thousand dollars ($1000) (the 'Net Winner Class') . . . ." J.A. 493. In moving to certify the class, Bell argued that the proposed class representatives and their counsel would provide fair and adequate representation of the defendant class's interests under Rule 23(a)(4). Regarding the proposed class counsel specifically, Bell argued that "counsel retained by the proposed Class Representatives are

5

experienced and qualified attorneys, fully capable of protecting the interests of their clients and consequently the class." J.A. 502. Bell also argued that "by virtue of defending themselves, the named Defendants will inevitably and fully litigate the merits of the claims against the other class members." J.A. 659.

Some of the named defendants opposed class certification. On August 29, 2014, several filed an opposition to Bell's motion for certification arguing that the putative class could not satisfy several of the requirements of Rule 23. Their objections were primarily economic. These named defendants argued that the proposed class representatives could not afford to fairly represent the class. Arguing against adequacy on cost grounds, these defendants catalogued the extensive costs imposed upon the proposed class representatives and class counsel:

> To represent the class, defense counsel would need to obtain, conduct, and review discovery pertinent not just to [these defendants], but to the class members . . . . If the Court certifies a class, the problem of class counsel providing free services to the class members and the Receiver will compound. After certification, Defendants will need to brief and litigate a number of issues related to discovery, summary judgment, experts, and other matters, as well as potentially try a case . . . . If [these defendants] received an adverse decision on these questions, particularly certification, [these defendants] would be obligated to immediately appeal on behalf of themselves or the members, solely to clarify the law at the earliest possible stage and fully protect all members' rights.

J.A. 626–29. Significantly, the named defendants did not address the due process concerns related to defendant class actions, including whether the court could properly assert personal jurisdiction over the absent class members or whether absent class members should have notice or opt out rights.

On February 10, 2015, the district court certified the defendant class under Rules 23(a) and 23(b)(1). In certifying the class, the district court determined that the class representatives and their counsel would adequately represent the class. However, the district court did not appoint class counsel at that time. Instead, it held that counsel for the named defendants are "fully capable of protecting the interests of their clients and consequently the class." J.A. 742. It likewise did not address personal jurisdiction or opt out issues.

Although not required under Rule 23(b)(1), the district court approved a notice of class certification. The notice described the certification decision and notified class members of their membership in the class. Describing the effect of the certification decision on class members, the notice provided that "[t]he Court has not yet ruled on the merits of the claims in this lawsuit; however, when it does so, its orders will be legally binding upon you and all other members of the Net Winner Class." J.A. 759. Regarding the role of class members in the liability determination, the notice stated that "[y]ou are not required to and there should be no need for you to participate in the legal proceedings related to answering the common questions for the Net Winner class." J.A. 759. Regarding the role of class members in the damages determination, the notice provided:

> You will, however, have an opportunity to participate in the process if the Net Winner Class is found to be required to repay their net winnings. If liability is found, the Receiver intends to seek a court Judgment against each class member in the amount of their individualized net winnings plus interest . . . . While the specifics of the process for determining those amounts has not yet been decided, the Receiver intends to seek a process that will notify you of the amount of your net winnings according to RVG records, allow you a reasonable opportunity to provide a response . . . and

7

then either reach an agreement on the amount or have the amount
determined by a judicial process.

J.A. 759–60. No class member objected to the district court's failure to appoint class

counsel.

In the months following the certification decision, counsel for the named

defendants and counsel for Bell continued to discuss arrangements to appoint class

counsel. However, the primary issue remained the costs of the defense. At a status

conference in May 2015, counsel for defendant Durant Brockett explained:

> Your Honor, I wanted to raise one issue . . . . It's the issue of the
> designation of class counsel, payment of class counsel's fees. This is an
> issue that arises I think in part because it's a defendant class as opposed to a
> plaintiff class. . . . But we're just in this odd place. . . . [M]y client is not
> interested in spending money on a vigorous defense. . . . I think, Judge,
> your words were at the status conference we had in January that these are
> unusual the defendant class actions and we're all kind of blind and blind
> here. . . . So what we had proposed was that if we were appointed to act as
> class counsel, I think Mr. Edmundson and I would agree to do that as long
> as we get agreement of -- a satisfactory agreement about payment of our
> fees.

J.A. 806–07. Due to a reluctance of the named defendants to pay for a defense, by July 6,

2015, all counsel for the named defendants had withdrawn except Kevin Edmundson,

who continued to represent four of the named defendants.

While these discussions were going on, the liability case moved forward. Prior to

certification, counsel for the named defendants submitted proposed names for defense

experts. After certification, counsel for the named defendants selected the expert for the

defendant class, and the district court approved the selection on May 27, 2015, ordering

the expert to begin work and to report directly to the court. Significantly, as counsel for

8

the named defendants themselves recognized, these events occurred without the district court appointing counsel to specifically represent the absent class members.

Finally, on September 11, 2015, the district court entered a consent order appointing Edmundson as class counsel. The order outlined the scope of Edmundson's responsibilities as class counsel, noting that the class issues before the court "relate[d] to the alleged liability of the Net Winners to return money won in the alleged ZeekRewards Ponzi and/or pyramid scheme . . . ." J.A. 830. According to the terms of the order, "Mr. Edmundson shall serve as Class Counsel until further order of this Court. However, it is not expected that Class Counsel will be engaged to represent the Net Winner Class following a finding, if any, of class liability." J.A. 830.

The order explicitly provided that any members of the Net Winner class that objected to the order must file objections within thirty days of the entry of the order. No such objections were filed.

Discovery in the case continued. From the record, it appears the main discovery related to expert witnesses. On May 26, 2016, the defense expert provided its final report. The expert report effectively conceded that Zeek was a Ponzi scheme. Following the completion of the defense expert's report, Edmundson, acting as class counsel, declined to depose Bell's expert witness.

On June 30, 2016, Bell moved for summary judgment against the named defendants and for partial summary judgment on all liability issues against the Net Winner class. Bell argued that because the Zeek scheme was "undisputedly a Ponzi scheme, the transfers of money to the defendants in excess of the money they paid into

9

the program . . . are fraudulent transfers as a matter of both statutory and common law." J.A. 940. In support of this argument, Bell cited to both his expert report and the defense expert report.

Acting as class counsel, Edmundson filed a response in opposition to the motion for partial summary judgment against the Net Winner class on July 29, 2016. The response focused primarily on two grounds: (1) Bell's claims were barred by contractual waivers and (2) the transfers were not fraudulent because the class members acted in good faith and paid fair value for the challenged transfers.

On November 29, 2016, the district court granted Bell's motion for summary judgment. The district court, in part relying on the defendants' concessions, concluded that Zeek operated as a Ponzi scheme and that the transfers from the scheme were fraudulent transfers. The district court rejected the arguments raised by the defendants.

With liability for all class members determined, the district court moved to the damages phase of the case. On January 27, 2017, the court entered an Order on Process for Determining the Amount of Final Judgments Against Net Winner Class Members (the "Process Order"). Pursuant to the terms of the Process Order, Bell would send notice to individual class members of the calculations of their Net Winnings which would be the amount of the judgment against them. Notice would also be posted on the parties' websites. If class members objected to these calculations, class members were first required to respond to the calculation in writing and to provide evidence supporting an alternative calculation. Objecting class members and Bell were then obligated to negotiate to resolve the disputed calculations. If the class members and Bell failed to

reach an agreement on the calculations, the matter would be referred to a Special Master. The order explicitly provided that individual class members "may hire counsel at their own expense to represent them with respect to the Request for Intervention and subsequent proceedings before the Special Master . . . ." J.A. 1861. If the parties did not agree that the Special Master's decision would be binding, then the matter could be appealed to the district court, at which point there could include, if appropriate, the opportunity for either party to request an individual jury trial on damages.

The Process Order also outlined the responsibilities of class counsel in the judgment determination process. It provided:

> Class Counsel for the Net Winner Class shall (i) post a notice on the Net Winner Class website describing the process set forth [in the order] and (ii) communicate to the Net Winner Class the availability from the Receiver of the Net Winnings amount for each class member. Class Counsel shall not be required to provide the amount of Net Winnings to each class member or otherwise communicate with the class members.

J.A. 1859. Regarding the future responsibilities of Edmundson, the order provided that "Class Counsel shall continue to serve until further order of the Court, but shall only be responsible for providing collective notice of the process for determining the Net Winnings of individual class members as described above." J.A. 1863.

Bell proposed the Process Order. As class counsel, Edmundson did not object. Likewise, no class member objected to the Process Order after its issuance and notice.

The damages phase of the case then began. Bell's expert determined the class members who received more money from Zeek than they paid into Zeek. Bell sent notice of these calculations to the Net Winner class on February 9, 2017. Class members were

11

instructed to provide a response indicating whether they accepted or disagreed with Bell's calculation of their net winnings sixty days from the notice date.

On June 27, 2017, Bell moved to enter final judgments against class members who accepted Bell's calculation of their net winnings, who submitted a proposed alternative calculation of their net winnings or who failed to complete a response prior to the Process Order's deadline. On the same day, the district court provided notice of the motion to enter final judgments against the class members with the following information:

> The Receiver remains willing to consider voluntary settlements with Net Winner Class members and others against whom the Receiver has claims. To date, there have been numerous settlements approved by the Court in which net winners and the Receiver agreed on an amount to be repaid, often with payment terms that allowed the net winner to repay the agreed amount over a number of months.

J.A. 2006–07.

On August 9, 2017, over two years after the district court certified the class and almost two years after the appointment of class counsel, the first objection from an unnamed class member was raised. Class member Edward Rourke moved to intervene and to decertify the class. Rourke challenged the adequacy of Edmundson as class counsel. Rourke alleged that: (1) Edmundson had conflicting interests as class counsel; (2) Edmundson failed to obtain an independent expert evaluation of the business and conceded the existence of a Ponzi scheme; and (3) since Edmundson only represented the class through the liability phase of the action, there was no adequate representation of class members during the damages phase and decertification was warranted.

On August 14, 2017, without yet ruling on Rourke's motion, the district court entered final judgment against the Net Winner class members. Then on September 11, 2017, unnamed class members Darlene Armel, Ronald Cox, Frank Scheuneman, Edward Rourke, Theresa Bridie, Marc Kantor, Paola Kantor, Tim Rice, Wayland Woods, D.W. and T.H. moved to intervene and decertify the class, and alternatively, to alter or vacate final judgment. According to these class members, due process required the decertification of the class since class counsel failed to represent the class at important stages of the proceedings. These class members alleged that: (1) Edmundson failed to vigorously represent the interests of the class and unnecessarily conceded the existence of a Ponzi scheme; (2) following the district court's entry of summary judgment, Edmundson failed to represent the interests of the class; and (3) Edmundson had potential conflicts of interest throughout his time as class counsel.

On October 5, 2017, Bell filed a response to these motions. Bell argued that the class should not be decertified at such a late stage in the proceedings with over 2,500 settlements made in reliance on the proceedings. Bell then argued that attacks on class counsel should be rejected as speculation regarding strategic decisions made by class counsel. Bell also dismissed the allegations of conflict of interest as speculative. On October 19, 2017, the class members filed a reply, raising the additional argument that the Process Order violated their right to a trial on damages.

Significantly, neither Rourke in his individual motion nor the other unnamed class members raised the failure of the district court to name class counsel at the time it certified the class; the failure of the district court to apply the Rule 23(g) factors in

appointing class counsel; commonality, typicality, or jurisdictional issues related to absent class members; or the absence of opt out rights.

On January 4, 2018, the district court denied the motions to decertify. The district court characterized the allegations regarding the adequacy of class counsel as "nothing less than an attempt to second guess the strategic choices made by counsel as to the best arguments to make or investigation to pursue." J.A. 2605. The court noted that decertification at late stages in litigation was disfavored and that there were already over 2,500 settlements of claims in reliance on the proceedings.

On February 2, 2018, Durant Brockett, Edward Rourke, Tim Rice, Frank Scheuneman, Ronald Cox, Theresa Bridie, Marc Kantor, Paola Kantor, Eddy Layne, T.H., Clyde Garrett, Larry Alford, Aaron Piha and Wayland Woods ("Class Members") appealed judgments entered against them, which were certified as final orders on January 4, 2018. Class Members appeal all rulings and statements that contributed to the final order, including the orders denying the motions to intervene and motions to decertify the class.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Class Members' appeal raises two primary issues. First, did the district court err in failing to appoint class counsel at the time of certification? Second, when the district court finally appointed class counsel, did it err in failing to examine the Rule 23(g) factors? To address these issues, we first consider the requirements of Rule 23 implicated

by Class Members' arguments. We then apply those requirements to the facts before us on appeal.

## A.

Defendant class actions, like plaintiff class actions, must comply with Rule 23. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Rule 23, which sets forth the requirements for class actions, is designed to provide the benefits of class actions while simultaneously avoiding the risks associated with them. The primary function of Rule 23 "is, through its various parts, to ensure the protection of absent class members' rights and, hence, the justification of the binding effect of the resulting judgment." 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 1:10 (5th ed. 2011).

Class Members' appeal focuses almost exclusively on the adequacy requirement of Rule 23(a). A class action is appropriate only when both class representatives and class counsel adequately protect the interests of the class. Rule 23(a)(4) sets out the requirement of adequate class representatives. The rule provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Rule 23(g) and Rule 23(c)(1)(B) address the requirements regarding class counsel. Rule 23(g) requires a "court that certifies a class" to "appoint class counsel." Rule 23(c)(1)(B) requires an order certifying a class to appoint class counsel under Rule 23(g). Fed. R. Civ. P. 23(c)(1)(B). Thus, a court must appoint class counsel at the time of

15

certification. 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:84 (5th ed. 2011).

In selecting who shall serve as class counsel, Rule 23(g) requires courts to consider four enumerated factors in appointing class counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The rule also permits courts to consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Rule 23's adequacy requirements provide critical safeguards against the due process concerns inherent in all class actions. *See, e.g.*, *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). But they are especially important for a defendant class action where due process risks are magnified. 1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 4:46 (15th ed. 2018). In defendant class actions, an unnamed class member can be brought into a case, required to engage in discovery and even be subjected to a judgment compelling the payment of money or other relief without ever being individually served with a lawsuit. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808

16

(1985).[2] Therefore, at a minimum, compliance with Rule 23 is necessary to protect against these heightened due process concerns.[3] *See, e.g., Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 691 (1961); *Bakalar v. Vavra,* 237 F.R.D. 59, 64 (S.D.N.Y. 2006); *Thillens, Inc. v. Community Currency Exchange Ass'n of Illinois, Inc*, 97 F.R.D. 668, 679 (N.D. Ill. 1983).

B.

Turning now to Class Members' argument that the district court abused its discretion by failing to appoint class counsel at the time of certification, Rule 23, as noted

---

[2] *See In re Gap Stores Sec. Litig.,* 79 F.R.D. 283, 292 (N.D. Cal. 1978) ("Elemental concepts of due process require that a defendant not suffer a binding adjudication of his rights and liabilities unless there have been reasonable attempts to notify him of the pendency of the action . . . ."); *Channell v. Citicorp Nat. Servs., Inc.,* No. 91 C 3428, 1996 WL 563536, at *2 (N.D. Ill. Sept. 30, 1996) ("The Court specifically finds that the potential mass adjudication of claims against the proposed defendant class . . . raises serious issues of fundamental fairness and unnecessary personal jurisdiction issues."); *Ameritech Ben. Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 820 (7th Cir. 2000) ("Defendant classes, initiated by those opposed to the interests of the class, are more likely than plaintiff classes to include members whose interest diverge from those of the named representatives . . . ."); 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 5:1 (5th ed. 2018).

[3] The due process rights of absent class members can also be protected through other requirements of Rule 23. Although not mandated in every type of class action, unnamed class members' rights are protected through notice and an opportunity to opt out of a class. Even when not required by Rule 23, courts are empowered to provide class notice under Rule 23(c)(2).  Failure to provide notice and/or opt our rights may deprive an unnamed defendant class member of the ability to challenge issues such as personal jurisdiction, venue and choice of law. *See* Elizabeth Barker Brandt, *Fairness to the Absent Members of A Defendant Class: A Proposed Revision of Rule 23*, 1990 B.Y.U. L. REV. 909, 911 (1990).

above, commands that class counsel be appointed at the time of certification.[4] Rule 23(c)(1)(B) plainly provides that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). This requirement is not optional.

The district court failed to follow this requirement of Rule 23. Class counsel was not appointed on February 10, 2015 when the class was certified. In fact, class counsel was not named until September 11, 2015. During these seven months, the liability phase of the case continued. The district court found that, during this time, the rights of the unnamed class members were protected by the alignment of interests between the class and the class representatives. Yet, while events impacting the liability and potential damages of the unnamed class members took place, the class had no attorney owing duties and responsibilities to the class.

Next considering the Class Members' argument that the district court erred by failing to apply the Rule 23(g) factors in appointing class counsel, as outlined above, Rule 23 requires that the adequacy of class counsel be considered under Rule 23(g). In applying Rule 23(g), courts must consider the four mandatory factors and may consider other permissive factors in assessing the adequacy of class counsel. Here, neither the certification order nor the consent order reference Rule 23(g) factors, nor discuss their application to this case.

---

[4] A district court's certification decision is reviewed for an abuse of discretion. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). "A district court abuses its discretion when it materially misapplies the requirements of Rule 23." *Id.*

The district court erred in failing to appoint class counsel at the time it certified the class and in failing to consider the Rule 23(g) factors when it named class counsel.[5] Failure to comply with the requirements of Rule 23 in the vast majority of cases render certification fatally defective. However, the unique circumstances of this case compel us to affirm the district court.

First, although Class Members claim these errors regarding class counsel were raised below, a careful review of Class Members' objections to certification in the proceedings below indicates they were not. After receiving notice of the class certification, no class members objected to the absence of class counsel. No class members objected to the failure of the district court to appoint class counsel at the time of certification after the class received notice of Edmundson's appointment some seven months later. No class members objected to the failure to appoint class counsel at the time of certification after receiving notice of the motion to enter final judgments against the class. Even when Class Members finally moved to decertify the case more than two years after the class was certified and almost two years after Edmundson was named class counsel, they failed to raise this objection.

---

[5] Certification of this defendant class appears to implicate other issues including commonality, typicality, possible absence of personal jurisdiction of absent class members and absence of opt out rights. While the district court considered commonality and typicality in its certification order, it did not address personal jurisdiction issues related to absent class members or the absence of opt out rights. These issues are of particular import in defendant class actions and should at a minimum be considered. However, because those issues were not raised below or on appeal, we decline to address them here.

Likewise, Class Members did not raise the district court's failure to apply the Rule 23(g) factors prior to or in their decertification motions. In fact, Rule 23(g) is only referenced twice in each decertification motion and both times in the context of a simple recitation of applicable law. *See* J.A. 2158 ("The adequacy of counsel is considered under Rule 23(a)(4) and Rule 23(g)."); J.A. 2225 (same).[6]

Appellants may not raise arguments on appeal that were not first presented below to the district court. *See Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002) ("[P]etitioner will only be allowed to appeal that aspect of the District Court's order that affects him—the District Court's decision to disregard his objections."); 4 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 14:18 (5th ed.) ("Most circuits . . . generally hold[] that any issue not objected to below was 'waived' and hence not available on appeal. This rule applies to objectors as well as to the parties themselves . . . .") (footnote omitted). As the Fifth Circuit explained "[f]ailure to raise a due process objection before a district court waives that objection on appeal. Litigants must allege constitutional violations with 'factual detail and particularity.'" *Newby v. Enron Corp.*, 394 F.3d 296, 309 (5th Cir. 2004) (quoting *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996) (citation omitted). Similarly, the First Circuit has held that "[a]ny argument the district court did not satisfy

---

[6] In support of Class Members' contention that these arguments were raised below to the district court, Class Members cite to a few statements in their motions to decertify and to two statements in their reply in support of a motion to amend or alter judgment. These statements, however, are largely generalities and do not explicitly advance these arguments. As discussed above, Class Members' motions to decertify focus almost exclusively on Edmundson's strategic choices as class counsel and his alleged conflicts of interest.

Rule 23(g) is waived because [appellant] raises this claim for the first time on appeal." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 41 (1st Cir. 2009). In the same way, we find that Class Members waived the arguments they now assert regarding the untimely appointment of class counsel and the failure of the court to consider the Rule 23(g) factors.

Second, due at least in part to the failure of any class member, including Class Members, to object to issues surrounding the appointment of class counsel until more than two years after the district court's order, this litigation has progressed to an extent that it would be difficult if not impossible to remedy the errors Class Members now raise. For example, over 2,500 class members have resolved the claims against them. These settlements have involved payment of funds by defendant class members and the distribution of funds to Net Losers. At this stage of the litigation in this case, the toothpaste cannot be put back into the tube. As one court observed:

> This court is also convinced that rescinding [the] certification order at this stage of the litigation would cause undue harm to Plaintiffs. Defendants have had multiple opportunities . . . to raise the issues they now have advocated to this court. To seek decertification more than four years after [the] class certification order with arguments that either were presented, or could have presented . . . is unwarranted and inappropriate.

*In re Sulfuric Acid Antitrust Litig.*, 847 F. Supp. 2d 1079, 1083 (N.D. Ill. 2011) (declining to decertify a class in an eight-year-old-case two months before trial).[7]

---

[7] Bell argues that any errors made by the district court in appointing class counsel were harmless. In light of the grounds on which we affirm the district court, we need not reach a broad holding as to whether noncompliance with Rule 23 in this or other contexts can be considered harmless in light of the due process and other concerns inherent in
(Continued)

Once again, we find that the district court erred in failing to comply with the requirements of Rule 23. However, because of the circumstances of this particular case which we describe above, we reject Class Members' argument that the district court's errors regarding adequacy of class counsel warrant reversal. Our decision, however, should not be construed to diminish the importance of compliance with Rule 23 for all class actions and for defendant class actions in particular. The circumstances that compel us to affirm the district court here are exceedingly narrow if not unique.[8]

---

defendant class actions. However, even if we were to consider Bell's argument in only this limited context, Class Members failed to show harm caused by the district court's errors. When asked at oral argument to identify any harm suffered as a result of the untimely appointment of class counsel and the failure to consider Rule 23(g) factors, Class Members' counsel could not identify with any degree of specificity any actual harm from the liability phase of the proceeding caused by this error. The only purported prejudice identified by Class Members was, in actuality, either second-guessing of class counsel's strategic decisions or concerns related to the damages phase of the proceeding. These concerns do not constitute actual harm resulting from the district court's errors concerning class counsel.

[8] Class Members also argue that the district court failed to ensure adequate representation during the damages phase of the proceeding and that the Process Order violated class members' due process rights to defend against damages. However, the district court provided a process by which damages could be individually challenged and litigated. This process included referral to a Special Master and ultimately the opportunity to appeal the Special Master's decision to the district court itself. This process is in line with other courts' treatment of the issue and is not an abuse of discretion. *See* 4 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 11:9 (5th ed. 2011) (discussing different mechanisms for handling the individualized damages phase of a proceeding, including referral to a special master or agreement to an alternative dispute resolution mechanism). Indeed, under the abuse of discretion standard, an appellate court recognizes "that a 'district court possesses greater familiarity and expertise than a court of appeals in managing the practical problems of a class action.'" *Berry v. Schulman*¸ 807 F.3d 600, 608 (4th Cir. 2015) (quoting *Ward v. Dixie Nat'l. Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010)).

III.

In conclusion, defendant class actions, which are among the rarest of proceedings sanctioned under the Federal Rules of Civil Procedure, present substantial due process and other risks to absent class members. To avoid these risks, at a minimum, compliance with Rule 23 is required. The district court here failed to comply with Rule 23 in certifying the class and in its subsequent untimely appointment of class counsel. While those errors would normally render the class certification deficient, because of the circumstances in this particular case, we affirm the judgments of the district court. The order of the district court is

*AFFIRMED.*