IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-91

| | |
|---|---|
| **KENNETH D. BELL, in his capacity as court-appointed Receiver for Rex Venture Group, LLC d/b/a ZeekRewards.com, and NATIONWIDE JUDGMENT RECOVERY INC., as successor in Interest to the Final Judgments entered against Net Winners,**<br><br>**Plaintiff,**<br><br>vs.<br><br><br><br>**A Defendant Class of Net Winners in ZEEKREWARDS.COM,**<br><br>**Defendants.** | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This matter is before the Court upon Defendant Lulu Yang's Motion to Set Aside Judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 1404). The matter, having been fully briefed, came on for an evidentiary hearing on July 12, 2022. After carefully considering all testimony, other evidence, and arguments presented at the hearing as well as considering the credibility and accuracy of the testimony and other evidence, this Court

concludes that the Final Judgment entered against Lulu Yang should be set aside. The Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1. On August 17, 2012, the Securities and Exchange Commission filed a Complaint in the Western District of North Carolina against Rex Venture Group, LLC d/b/a ZeekRewards.com ("RVG") and Paul R. Burks (the "SEC Action"), alleging that RVG and Burks fraudulently offered and sold securities in an unregistered offering as part of a combined Ponzi and pyramid scheme. *Securities and Exchange Commission v. Rex Venture Group, LLC d/b/a ZEEKREWARDS.COM, et. al*., No. 3:12-cv-519 (W.D.N.C. Aug. 17, 2012). A receiver was appointed in the SEC Action for and over the assets, rights, and all other interests of the estate of RVG. Compl., ¶ 5.

2. On February 28, 2014, the Receiver for RVG filed the Complaint in the present action against several individual entities including a Defendant Class of Net Winners of ZeekRewards.com. Doc. No. 1. The Defendant Net Winner Class was defined as participant[s] in ZeekRewards who received more money from RVG/ZeekRewards (as "profit payments," "commissions," "bonuses" or any other payments) than was paid in to RVG/ZeekRewards for the purchase of "bids," monthly "subscriptions," "memberships," or other fees. Compl., ¶¶ 39-40. Because the members of the Net Winner Class were so numerous, the individuals were not joined in the lawsuit, but were alleged to have "voluntarily participated in the ZeekRewards scheme as affiliates." *Id*. at ¶¶ 42, 45. At the time the Complaint was filed, the Receiver estimated that there were approximately 9,000 Net Winner Class members. *Id*. at ¶ 42.

3. After the Net Winner Class was certified, this Court entered a Process Order designed to (1) provide Net Winners with notice that they were members of the Net Winner Class; and (2)

to provide Net Winners with the opportunity to contest the amount of their winnings. *See* Doc. No. 153 at 2.

4. The Process Order required the Receiver to provide notice to all persons that he believed were part of the Net Winner Class with notice "by email to the email address provided by the net winner in connection with any account" with ZeekRewards "as well as any other email address that has been provided by the net winner." *Id.* at 2, ¶ 3.

5. "In the event that the notice [could not] be delivered to any email address provided by the Net Winner," the Receiver was required to "send a letter to the last known physical address of the Net Winner informing the Net Winner of the proceedings and the availability of the amount of his or her Net Winnings." *Id.*

6. The Receiver was also required to "post a link on the Receivership website" that allowed Net Winners to access all this information. *Id.*

7. On August 14, 2017, this Court entered Final Judgment Against Certain Net Winner Class Members, one of which was identified as Lulu Yang. Doc. Nos. 179, 179-1, 179-2. In December of 2019, the Final Judgment was purchased by and assigned to Nationwide Judgment Recovery, Inc. ("Nationwide"). Thereafter, Nationwide caused the Final Judgment to be domesticated in the Central District of California.

8. Yang first learned about the ZeekRewards case and Judgment against her in March 2021, when she received a Notice of Involuntary Lien addressed to her at her mother's address, 115 Habitat Terrace, San Francisco, California 94112. Through diligence and investigation, Yang discovered that the Lien stemmed from the underlying Final Judgment in this Action.

9. Yang, at all relevant times, did not reside at 115 Habitat Terrace, own the property, or rent the property. Transcript of July 12, 2022 Hearing ("Trans."), pp. 11, 35. In fact, she has

3

never lived there. *Id.* at p. 54. She received the Notice of Lien through a text message from her mother. *Id*. at p. 16.

    10. The evidence shows that Yang was unaware of this ZeekRewards action in this Court before March 2021, and there is no compelling evidence that she knew. For example:

    a. Yang resides in California, and never visited North Carolina during the relevant time period. *Id.* at p. 9.

    b. Yang did not monitor this Court's docket. *Id*.

    c. She did not have an opportunity to participate in the ZeekRewards litigation leading to the Judgment. *Id*. at p. 10.

    d. Emails were not sent from this Court or the Receiver to Yang's correct email address. *Id*. at pp. 10-11, 18.

    e. Mail was not sent to Yang's correct mailing address from the Court or Receiver, and she received no mail regarding this case. *Id.*

    f. Yang received no documents at all from the Court or Receiver about ZeekRewards. *Id*. at p. 19.

    g. Yang was not a participant in ZeekRewards.

    h. There is no evidence (such as a certified mail receipt) of Yang receiving correspondence from this Court. *Id*. at pp. 91-92.

    i. Yang did not receive or benefit from, directly or indirectly, any ZeekRewards money or funds from the related Rex Ventures Group. *Id*. at pp. 31, 47.

    j. She never received mail, emails, texts, or other communications from Nationwide until March 2021. *Id*. at pp. 31-32. If she had, she would have

4

Case 3:14-cv-00091-GCM   Document 1783   Filed 08/05/22   Page 4 of 10

contacted a lawyer, investigated, and reported Tan to the police earlier. *Id*. at p. 33.

k. She never signed for any letters from Nationwide, and Nationwide did not send mail in a manner that generated proof of delivery. *Id*. at pp. 34, 91-92.

l. To the extent Nationwide called her – and Nationwide offered no evidence that it did call her except unsupported testimony – she assumed the calls were spam and did not take them. *Id.* at pp. 33-34, 65. She does not recall any Nationwide calls. *Id*. at pp. 33-34. Nationwide admits that it does not know if calls to her were recorded, and produced no recordings at the hearing. *Id.* at pp. 89-91. It does not even know how Nationwide representatives identified themselves or the purpose of the call, if at all. *Id*. at p. 90.

11. Yang was at all relevant times, financially independent and did not rely on her parents or ZeekRewards for support. *Id*. at p. 32. Her stepfather threw her out of the house in 2009, years before the ZeekRewards issue. *Id.* at p. 36.

12. Nationwide offered no credible evidence that Yang deposited ZeekRewards funds into any account she controlled. *Id.* at pp. 88-89. Nationwide suggested that endorsements on deposited ZeekRewards checks matched Yang's signature. *Id.* at pp. 58-62, 66-67. However, the Court concludes that the signatures on the checks were likely forgeries, as she denied endorsing the checks and the signatures endorsing the checks clearly do not match the authentic Yang signatures on her Declarations filed in this case and on her driver's license.

13. The evidence shows that Yang previously did not know about ZeekRewards and had no knowing involvement in it. Rather, she is the victim of identity theft. *Id.* at pp. 23-34.

5

14. She did not learn the truth – that, during and after 2011, her stepfather Leon Tan used her personal information, unknown to her, to sign up for and participate in ZeekRewards – until March 2021 and the months after that. *Id.* at pp. 20-21.

15. After receiving the March 2021 Notice of Lien and upon investigation, Yang learned that the judgment against her was a result of a ZeekRewards account with the username "LEONTAN2688" that was associated with Yang. *Id*. at p. 27. But Yang had no knowledge of ZeekRewards, this Action, or any ZeekRewards account associated with her personal information, and did not create the account. *Id.* at pp. 27-28. Yang learned through speaking with her mother, and through her attorney's efforts, that the account LEONTAN2688 was created by her former stepfather Rongqing "Leon" Tan. *Id.* at pp. 21-22.

16. While Tan was using Yang's identity for ZeekRewards, Yang was distracted by school and a busy work schedule. *Id*. at p. 24. She rarely spoke with or saw Tan, with whom she had a strained relationship because of his abusive behavior. *Id.* at pp. 24-25.

17. Tan concealed ZeekRewards mail related to Yang's account by causing it to be sent to 145 Guerrero Street, San Francisco, where he intercepted it. *Id.* at p. 25. Yang never lived at that address. *Id.*

18. Tan further concealed his identity theft and ZeekRewards from Yang by using the email address leontan2688@gmail.com for the account associated with her information, which is not one of Yang's email addresses, and which is an email address Tan controlled. *Id.* at p. 87. Nationwide's representative admitted at the hearing that, in his review of documents produced to Nationwide from the Receiver when the Yang Judgment was purchased, he never came across any documents reflecting Yang's two real email addresses, which are angel*********@gmail.com and angel*****@hotmail.com. *Id.* at pp. 87-88.

6

19. Tan has mentally and emotionally abused Yang, and physically abused Yang's mother, causing her mother not to report the fraud to Yang out of fear. Doc. No. 1405-1; Trans., p. 23.

20. Immediately upon receiving the Notice of Involuntary Lien, Ms. Yang retained counsel to investigate the cause of the Lien. *Id*. at pp. 14, 17.

21. Yang made vigorous and sincere efforts to address Tan's fraud, demonstrating that she was his victim with no prior knowledge that her identifying information had been used for the ZeekRewards scheme.

22. For instance, upon learning of Tan's fraud, Yang – beginning promptly in April 2021 – filed reports with the Federal Trade Commission, the Federal Bureau of Investigation, the California Attorney General's Office, as well as the San Francisco Police Department. Doc. No. 1405-4; Trans., pp. 14, 24, 28-29.

23. Yang also hired a second attorney to negotiate with Nationwide and prevent an attempted wage garnishment. Trans., pp. 29-30.

24. Yang, through counsel, contacted Nationwide to notify it of the error. *Id.* at pp. 30-31.

25. After attempts to negotiate with Nationwide failed, Yang retained counsel in North Carolina to attempt to set aside the judgment and file the instant Motion. On December 31, 2021, Yang promptly filed her Motion to Set Aside Judgment Pursuant to Rule 60(b)(6). Doc. No. 1404; Brief in Support of Yang Motion, Doc. No. 1405.

## CONCLUSIONS OF LAW

1. Rule 60(b)(6) of the Federal Rules of Civil Procedure authorizes the Court to relieve a party from final judgment for "any other reason that justifies relief." It is a catchall provision that may be invoked in "extraordinary circumstances" when the reason for relief does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5), and it includes "few textual limitations." *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011).

2. The motion for relief must be made within a reasonable time, the movant must have a meritorious claim or defense, and the opposing party must not be unfairly prejudiced by having the judgment set aside. *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018).

3. Yang's Motion is timely. Yang, upon receiving notice of this Action in March of 2021, immediately retained counsel. She promptly filed reports with the Federal Trade Commission, the Federal Bureau of Investigation, the California Attorney General's Office, as well as the San Francisco Police Department. Doc. No. 1405-4. After conducting her own investigation, and with the help of her attorneys, Yang filed her Motion to Set Aside the Judgment within a year of finding out of its existence.

4. Yang has a meritorious defense – identity theft. Like other courts, this Court has determined that identity theft can form a sufficient basis to set aside a judgment under Rule 60(b)(6) or under analogous Rules of Federal Procedure. *See* Order on Vladimir Krepets' pro se Motion to Set Aside Judgment (July 11, 2022) (Doc. No. 1774) (evaluating motion under Rule 60(b)(6) for claims of identity theft); *see also Flores v. Koster*, No. 3:11-CV-0726-M-BH, 2012 WL 6850724, at *2 (N.D. Tex. Dec. 19, 2012) (On Rule 55(c): "Finally, Defendant's declaration raises a potentially meritorious defense, identity theft, to Plaintiffs' claims against him. Because Defendant has shown good cause, his motion to set aside default should be granted."); *Sunbridge*

*Capital, Inc. v. Lumsden*, No. 1:08-CV-0456-RWS, 2009 WL 1035244, at *1 (N.D. Ga. Apr. 15, 2009) (motion to set aside default judgment granted as defendant, among other things, asserted identity theft, a valid legal defense to the action).

5. In support of her contention that she did not know about the use of her information for Tan's ZeekRewards account, Yang testified, among other facts listed above in the Findings of Fact, that she did not reside at the address associated with the ZeekRewards account. She further testified that her email address was not associated with the ZeekRewards account, she did not receive any notices from this Court regarding the proceedings underlying the judgment, and ultimately had no knowledge of ZeekRewards until March of 2021.

6. In support of the contention that she was the victim of identity theft, among other facts listed above, Yang testified that she received no funds from ZeekRewards, did not open the account, and did not know her personal information was used to open the account. She further testified that her stepfather, who has mentally and emotionally abused her, used her information to open the account without her knowledge.

7. The Court finds Yang's testimony to be credible.

8. Nationwide cannot be prejudiced if the Court were to set aside a judgment that was not valid in the first place. As an assignee, Nationwide only has the same rights that the Receiver would have had to collect from Yang. *See Collins v. First Fin. Servs., Inc*., No. 7:14-CV-288-FL, 2016 WL 589688, at *14 (E.D.N.C. Feb. 10, 2016) (citing *Credigy Receivables, Inc. v. Whittington*, 689 S.E.2d 889, 893-94 (N.C. Ct. App. 2010)). Because the Receiver did not have a valid judgment against Yang, Nationwide likewise does not have a valid judgment against Yang. Since Yang is the victim of fraud, at minimum she deserves an opportunity to participate in the proceedings before she is subjected to a considerable money judgment. Moreover, Yang will
9

suffer substantial prejudice if she is required to repay a judgment that she is not responsible for and of which she had no knowledge.

9. Extraordinary circumstances exist such that the judgment against Yang should be set aside.

IT IS THEREFORE ORDERED that the Motion to Set Aside Judgment (Doc. No. 1404) is hereby GRANTED.

Signed: August 5, 2022

Graham C. Mullen
United States District Judge